UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

Case Number:    6:10 cv 637-ORL-28KRS

GUIDEONE ELITE INSURANCE COMPANY,

                Plaintiff,

v.

MOUNT MORIAH AME CHURCH,

                Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, GUIDEONE ELITE INSURANCE COMPANY, by and through its undersigned counsel, hereby files this their Complaint for Declaratory Judgment against Defendant, MOUNT MORIAH AME CHURCH, and in support thereof states the following:

### PARTIES AND JURISDICTIONAL ALLEGATIONS

1.    Plaintiff, GuideOne Elite Insurance Company ("GuideOne"), brings this action for Declaratory Judgment pursuant to 28 U.S.C. §§2201-02.

2.    GuideOne is a corporation formed under the laws of Iowa with its principal place of business in Des Moines Iowa.

3.    Upon information and belief, at all times material hereto, Defendant, Mount Moriah AME Church ("Mount Moriah"), has been a corporation formed under the laws of the State of Florida, with its principal place of business in Brevard County, Florida.

4.    This Court has subject matter jurisdiction over this action pursuant to 28

1

U.S.C.§1332, as the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. Mount Moriah seeks insurance coverage for property damages in excess of $75,000 under an insurance policy with limits of $1,026,000 for the building and $189,400 for personal property.

5.    Venue is proper in the Middle District of Florida under 28 U.S.C. §1391, because upon information and belief:

   a.    The insuring agreement upon which this action is based was delivered to Mount Moriah by its broker in Florida;

   b.    The loss occurred in Cocoa, Florida, within the Middle District of Florida; and

   c.    Mount Moriah is located within this District and is subject to personal jurisdiction in this District.

6.    An actual controversy exists between the parties regarding the insurance coverage provided under a certain insuring agreement between GuideOne and Mount Moriah, which are described with more detail below.

7.    All conditions precedent to the filing of this action have occurred or have otherwise been complied with.

## FACTUAL ALLEGATIONS

### Guide One's Policy Number 1263-683

8.    Plaintiff, GuideOne, is a mutual insurance company and an admitted insurer in the State of Florida.

9.    GuideOne issued to Mount Moriah, the named insured, a commercial package policy that included forms for general liability, property and business income

2

insurance with policy number 1263-683 (hereinafter "the policy" or "the subject policy"). A true and correct copy of the subject policy is attached hereto as Exhibit A and is incorporated herein by reference.

10. The policy, on the declarations page, included coverage for Mount Moriah's church property located at 234 Stone Street, Cocoa Beach, Florida, Brevard County, Florida (hereinafter "the property" or "the subject property").

11. The subject  policy had effective dates for the period commencing 3/27/2009 through 3/27/2010.

12. The policy provided Commercial Property coverage for property damage caused by an "occurrence" subject to a limit of $1,026,00 per occurrence for the church building and $189,400 for personal property at the subject property.

13. Pursuant to the coverage grant of GuideOne's policy, coverage was provided, in relevant part, in the Building and Personal Property Coverage Form as follows:

> **A.   COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. **Covered Property**
>
> > Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
> >
> > **a. Building,** meaning the building or structure described in the Declarations, including:
> >
> > > **(1)**   Completed additions;

3

(2)    Fixtures, including outdoor fixtures permanently installed on the described building;

(3)    Permanently installed:

(a) Machinery and

(b) Equipment;

(4)    Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

    (a)    Fire extinguishing equipment;

    (b)    Outdoor furniture;

    ( c)    Floor coverings; and

    (d)    Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5)    If not covered by other insurance:

    (a)    Additions under construction, alterations and  repairs to the building or structure;

    (b)    Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making addition, alterations or repairs to the building or structure;

(6)    Signs, radio and television antennae and satellite dishes attached to the building or within 100 feet of the described premises;

(7)    Walls, fences and walks.

**b.  Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations

4

or on the Your Business Personal Property – Separation of Coverage form:

    **(1)**    Furniture and fixtures;

    **(2)**    Machinery and equipment;

    **(3)**    "Stock";

    **(4)**    All other personal property owned by you and used in your business;

    **(5)**    Labor, materials or services furnished or arranged by you on personal property of others;

    **(6)**    Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

        (a) Made a part of the building or structure you occupy but do not own; and

        (b) You acquired or made at your expense but cannot legally remove;

    **(7)**    Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

        Our payment for loss or damage of this lease property will be the lower of:

        **(a)**    Up to the value stated in the lease agreement; or

        **(b)**    The replacement cost value;

    **(8)**    Personal Property of Others that is:

        **(a)**    Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises; and

**(b)** Business personal property belonging to your "ministers," managerial employees, officers or directors; personal property of others used by you for business purposes.

However, our payment for loss of or damage to Personal Property of Others will only be for the account of the owner of the property.

14. Section F of the Common Policy Conditions also states as follows:

**F.     TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured....

15. The policy, however, also includes certain duties and responsibilities that the insured is required to comply with as set forth in the policy's loss conditions:

**Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

6

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

16.    The policy coverage also includes certain Commercial Property Conditions:

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This coverage Part;

**2.** The covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this coverage Part.

<u>**THE INSURANCE CLAIM**</u>

17.    On September 4, 2009, the subject property suffered an occurrence when it was hit by lightning on two occasions.

7

18.   The lightning started a fire in the steeple which allegedly caused damage to the
      property.

19.   The property allegedly sustained smoke, fire and water damage to the steeple and
      church building and personal property contained therein.

20.   Mount Moriah provided notice of the loss to GuideOne on or about September 8,
      2009.

21.   Following notice of the loss, GuideOne promptly opened the matter as Claim
      Number 10 C 30125 and initiated an investigation of the claim.

22.   GuideOne has been investigating the September 4, 2009 loss under a full and
      complete reservation of rights properly issued and received by the insured dated
      October 21, 2009 (see attached Exhibit B).

23.   GuideOne's investigation of the loss included initial inspections of the property on
      September 10, 2009 and September 15, 2009.

24.   GuideOne's investigation of the claim also included the performance of a forensic
      structural investigation on September 15, 2009.

25.   Mount Moriah hired a public adjusting company, Claims Management Services, Inc.
      (hereinafter CMSI), to assist them in the presentation of their claim on October 5,
      2009.

26.   Notice was provided to GuideOne concerning the hiring of CMSI by letter dated
      October 6, 2009.

27.   CMSI is and was at all times serving as Mount Moriah's agent and had full authority
      to act and make representations on behalf of Mount Moriah concerning the
      insurance claim.

8

28. GuideOne issued a Reservation of Rights letter to Mount Moriah on October 21, 2009 along with a request for a Sworn Statement in Proof of Loss.

29. Pursuant to the terms and conditions of the policy, the Proof of Loss was to be submitted to GuideOne within 60 days from the date it was provided to the insured.

30. Following the inspections of the property, payment was issued to Servpro of Central Brevard on behalf of Mount Moriah on October 27, 2009 in the total amount of $46,632.15 for:

    a.    Business personal contents ($28,183.70)

    b.    Business Personal Property Cleaning and Storage ($18,448.45)

31. On November 11, 2009, GuideOne issued payment for temporary roof repairs in the sum of $2,604.43.

32. Mount Moriah presented a Proof of Loss to GuideOne on December 3, 2009.

33. The Proof of Loss was rejected by GuideOne on December 15, 2009 because it was incomplete and because there was a dispute as to the scope and cost of repairs claimed (see attached Exhibit C).

34. GuideOne reissued the Reservation of Rights on December 15, 2009.

35. GuideOne provided payment on December 15, 2009 for the undisputed amount of the building fire damage totaling $88,593.24 after application of the $2,500 deductible.

### COUNT I - CLAIM FOR DECLARATORY RELIEF

### Failure to Comply with Policy Conditions

36. On December 15, 2009, GuideOne requested Mount Moriah provide a Sworn Statement in Proof of Loss for the building damages that would be due on February

13, 2010.

37.   Mount Moriah has failed to comply with their duty under the policy in providing a
      Sworn Statement in Proof of Loss for the building damages.

38.   On December 15, 2009, GuideOne requested Mount Moriah provide a Sworn
      Statement in Proof of Loss for the business personal property damages that would
      be due on February 13, 2010.

39.   Mount Moriah has failed to comply with their duty under the policy in providing a
      Sworn Statement in Proof of Loss for the business personal property damages.

40.   On December 15, 2009, GuideOne requested Mount Moriah provide a Sworn
      Statement in Proof of Loss for the indirect loss damages that would be due on
      February 13, 2010.

41.   Mount Moriah has failed to comply with their duty under the policy in providing a
      Sworn Statement in Proof of Loss for the indirect loss damages.

42.   On January 19, 2010, Mount Moriah was requested to submit to an Examination
      Under Oath (EUO).

43.   The request for an EUO went unanswered by Mount Moriah.

44.   During an inspection of the premises on February 18, 2010 to evaluate an alarm
      panel, the independent adjuster retained by GuideOne to evaluate this portion of the
      claim was ordered by Mount Moriah to terminate the inspection and leave the
      premises notwithstanding the fact that the inspection was scheduled and
      coordinated with Mount Moriah.

45.   Mount Moriah also became involved in a dispute with GuideOne over the scheduling
      of an inspection of the church duct system when the inspector hired by GuideOne

appeared on November 19, 2009 to evaluate the alleged damage to the church duct work.

46. It is GuideOne's position that the claims asserted by Mount Moriah are not covered under the policy because of Mount Moriah's failure to comply with the conditions of the policy as set forth in Exhibit A to the Complaint.

47. It is the position of GuideOne that no coverage exists under the subject policy for any damages claimed as a result of the occurrence due to Mount Moriah's failure to comply with the policy conditions.

48. It is the position of GuideOne that no coverage is available under the subject policy for any property damage which is determined to have been caused by the occurrence due to Mount Moriah's failure to comply with the policy conditions.

49. Because of Mount Moriah's failure to comply with the conditions of the policy, GuideOne's ability to discern the damage claim has been prejudiced.

50. Plaintiff, GuideOne, is in doubt as to its rights, duties and obligations under the subject policy with respect to the claims which have been asserted as a result of the occurrence.

51. An actual, present and justiciable controversy exists between Plaintiff, GuideOne, and Defendant, Mount Moriah, warranting the entry of declaratory judgment by this Court.

## COUNT II - CLAIM FOR DECLARATORY RELIEF

### Concealment and Misrepresentations

52. GuideOne realleges and restates the allegations contained in paragraphs 1-42, as

if fully set forth herein.

53.    On February 8, 2010, GuideOne received from Mount Moriah a claim for damage to the fire alarm panel.

54.    The alleged damage to the fire alarm panel was not disclosed on the Proof of Loss submitted by Mount Moriah on December 3, 2009.

55.    Mount Moriah did not provide GuideOne with any prior written notice that it was making a claim for the alarm panel until February 8, 2010.

56.    Mount Moriah submitted a bid for repairs to the alarm system that included improvements to another building not subject to this claim.

57.    The bid also contained rebates for items that were presented as damaged but that were in fact not damaged.

58.    GuideOne was compelled to retain the services of a fire alarm specialist to investigate the claim of damage to the alarm panel.

59.    The fire alarm specialist determined that the damage to the alarm system was not as extensive as alleged by Mount Moriah, including the fact that in many instances, the equipment still worked.

60.    Mount Moriah also presented a claim for the church sound system and represented that it had been "soaked" and that "several channels [were] not functioning."

61.    Mount Moriah presented a claim for $5,095.98 to replace the sound system components.

62.    GuideOne was compelled to retain the services of a specialist to investigate the claim of damage to the sound system.

63.    GuideOne's investigation of the sound system revealed that there was no sign of

12

water damage and that the components operated properly.

64. Mount Moriah also claimed in the Proof of Loss submitted that there was smoke and soot damage to the ducts that required $17,922.00 in cleaning from their mitigation contractor.

65. GuideOne was compelled to retain the services of a duct professional to investigate the claim of damage to the ducts.

66. The duct professionals determined that the ducts had no indication of soot or damage as a result of the fire.

67. Mount Moriah engaged in a series of misrepresentations concerning the scope and amount of the claimed loss which have been relied upon by GuideOne to their detriment.

68. As a result, GuideOne has unnecessarily expended sums of money to investigate the misrepresentations of Mount Moriah and GuideOne has been prejudiced in their investigation of the claim.

69. It is the position of GuideOne that the claims which have been asserted by Mount Moriah are not covered under the policy because the policy is void due to the misrepresentations of Mount Moriah.

70. It is the position of GuideOne that no coverage exists under the subject policy for any damages claimed as a result of the occurrence.

71. It is the position of GuideOne that no coverage is available under the subject policy for any property damage which is determined to have been caused by the occurrence.

72. Plaintiff, GuideOne, is in doubt as to its rights, duties and obligations under the

subject policy with respect to the claims which have been asserted as a result of the occurrence.

73.   An actual, present and justiciable controversy exists between Plaintiff, GuideOne Elite Insurance Company, and Defendant, Mount Moriah AME Church, warranting the entry of declaratory judgment by this Court.

   **WHEREFORE**, Plaintiff, GuideOne Elite Insurance Company, respectfully requests that the Court enter judgment declaring that, under the proper construction and application of the GuideOne Elite Insurance Company insurance policy that (a) there is no coverage for the claims made by Mount Moriah AME Church, (b) the policy of insurance is void and c) GuideOne be returned any and all payments made with interest, and (d) any and all further relief that this Court deems just, equitable and proper under the circumstances including an award of attorneys' fees and costs.

Dated this _21st_ day of April, 2010

Charles Andrew Tharp, Esq.
JOHNSON, LEITER & BELSKY, P.A.
Attorneys for Plaintiff
707 S.E. 3rd Avenue, Third Floor
Fort Lauderdale, FL 33316
Telephone:   (954) 462-3116
Facsimile:   (954) 761-8990

BY: _____
       CHARLES ANDREW THARP
       FL Bar No.: 0746134